IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRUSTEES OF THE NATIONAL
AUTOMATIC SPRINKLER INDUSTRY
WELFARE FUND, *et al*.  *

    Plaintiffs,  *

v.  *  Civil Action No. PX-18-2359

715 FIRE PROTECTION, LLC, *et al*.  *

    Defendants.  *
                                    *****

**MEMORANDUM OPINION**

Pending before the Court is Plaintiffs Trustees of the National Automatic Sprinkler Industry Welfare Fund, Trustees of the National Automatic Sprinkler Local 669 UA Education Fund, Trustees of the National Automatic Sprinkler Industry Pension Fund, Trustees of the Sprinkler Industry Supplemental Pension Fund, and Trustees of the International Training Fund's ("NASI Funds" or "Plaintiffs") Motion for Default Judgment. ECF No. 8. Defendants 715 Fire Protection, LLC, ("715 Fire Protection"), Matthew Jungbluth, and Sarah Jungbluth have not filed a response or entered their appearance, and the time for doing so has passed. *See* Loc. R. 105.2.a. For the following reasons, NASI Funds' request for this Court to enter default judgment in the amount of $176,003.11 is GRANTED.

**I.    BACKGROUND**

The following facts are taken from the Complaint and accepted as true. ECF No. 1. Plaintiffs are multi-employer benefit plans as that term is defined in § 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3). Plaintiff Funds are established and maintained according to the provisions of the Restated Agreements and

Declarations of Trust ("Trust Agreements") establishing the NASI Funds and the Collective Bargaining Agreement ("CBA") between Road Sprinkler Fitters Local Union No. 669 ("the Union") and Defendant 715 Fire Protection. ECF No. 1 ¶ 1. Defendant 715 Fire Protection is a contractor or subcontractor in the sprinkler industry and at all times was an "employer in an industry affecting commerce" as defined in the Labor-Management Relations Act, 29 U.S.C. §§ 142(1), (3), 152(2); ERISA, 29 U.S.C. §§ 1002(5), (9), (11), (12), (14); and the Multi-Employer Pension Plan Amendments of 1980, 29 U.S.C. § 1001(a). *Id.* ¶ 2. Defendant Matthew Jungbluth is the President of 715 Fire Protection. *Id.* ¶ 3. Defendant Sarah Jungbluth is the Registered Agent of 715 Fire Protection. *Id.* at 1.

Plaintiffs entered into a CBA with 715 Fire Protection on April 23, 2015. ECF No. 1 ¶ 6; ECF No. 8-5. The CBA required 715 Fire Protection to submit reports and pay to Plaintiffs certain contributions for each hour worked by certain of 715 Fire Protection's employees under the CBA. ECF No. 1 ¶ 6–8. The CBA covered certain of 715 Fire Protection's employees from August 2015 through the filing of the Complaint. *Id.* ¶ 8; *see also* ECF No. 8-6 (extending the relevant terms of the CBA).

715 Fire Protection had difficulty making the required benefit contributions owed to Plaintiffs. ECF No. 1 ¶ 9. In response, the Nasi Funds and 715 Fire Protection entered into a Settlement Agreement and a Promissory Note ("settlement documents") on April 5, 2018. *Id.*; ECF No. 8-15. The settlement documents provided for the payment of the principal amount of $45,692.76 by 715 Fire Protection to NASI Funds in ten monthly installments. ECF No. 1 ¶ 9. This amount reflected contributions owed on behalf of employees performing work during the periods of August 2015 through December 2016 and December 2017 through February 2018, as well as for prior amounts owed. ECF No. 8-15 at 2. The settlement documents waived

$24,416.77 in liquidated damages contingent upon 715 Fire Protection making the monthly payments under the settlement, filing all the monthly reports, and paying all future monthly contributions to the NASI Funds as they became due. *Id.* ¶ 3. Individual Defendants Matthew and Sarah Jungbluth agreed personally to guarantee the payments under the settlement documents, including but not limited to payment of the principal amount owed and future amounts that may become due during the duration of the Settlement Agreement. ECF No. 1 ¶ 10.

Defendant 715 Fire Protection defaulted on the terms of the settlement documents by failing to make contributions between February 2018 and September 2018 and by failing to make the necessary settlement payments on June 15 and July 15, 2018. ECF No. 1 ¶ 11; ECF No. 8-4 ¶ 13.

On August 1, 2018, NASI Funds filed this action against Defendants, seeking to recover contributions and liquidated damages due and unpaid by Defendants under the terms of the CBA and Trust Agreements, as well as amounts due under the settlement documents, plus accrued interest, costs, and attorneys' fees. *See* ECF No. 1 at 7. After the filing of this action, 715 Fire Protection submitted remittance reports for the months of February to August 2018 but did not make any payments to the Funds. ECF No. 8-4 ¶ 14.

On September 6, 2018, Plaintiffs properly served 715 Fire Protection and Matthew and Sarah Jungbluth. ECF Nos. 4–6. Defendants failed to respond to the Complaint or otherwise contest the claims. On November 19, 2018 NASI Funds moved for Entry of Default and Default Judgment against Defendants under Federal Rule of Civil Procedure 55(b). ECF Nos. 7–8. On November 28, 2018, the Clerk entered default pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 9. The Court now grants Plaintiffs' Motion for Default Judgment.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs defaults and default judgments and provides that default must be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The court may then enter default judgment at the plaintiff's request and after notice is given to the defaulting party. Fed. R. Civ. P. 55(b)(2). Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), the court may exercise its discretion in granting default judgment when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When considering the propriety of default judgment, the court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in the context of default judgments. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *Russell v. Railey*, No. DKC 08–2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g., Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the complaint avers sufficient facts from which the court may find liability, the court

4

next turns to damages. *See Ryan*, 253 F.3d at 780–81. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See* Fed. R. Civ. P. 54(c); *Lawbaugh,* 359 F. Supp. 2d at 422; *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

## III. DISCUSSION

### A. Liability

ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also* 29 U.S.C. § 1132(g) (providing that employers who fail to timely make contributions are liable in a civil action for, *inter alia*, unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees, and costs of the action). ERISA "provide[s] trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685–86 (D. Md. 2013) (quoting *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988)). The United States Court of Appeals for the Fourth Circuit has held that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.,* 118 F.3d

1018, 1021 (4th Cir. 1997).

Taking NASI Funds' well-pleaded facts in the Complaint as true, Plaintiffs have established that 715 Fire Protection was required to make employer contributions to the NASI Funds. Plaintiffs have also established that 715 Fire Protection failed to make such contributions, in violation of 29 U.S.C. § 1145. *See* ECF No. 1 ¶¶ 11–13. The Complaint makes plain that Defendants are jointly and severally liable for the payment of amounts owed to NASI Funds. *See id*. ¶¶ 17–19. Default judgment in the amount of unpaid contributions is appropriate.

NASI Funds also bring an action under Section 301 of the Labor Management Relations Act. Under this section, suits for violation of a CBA may be brought in any United States District Court having jurisdiction over the parties. 29 U.S.C. § 185(a); *see also Lewis v. Benedict Coal,* 361 U.S. 459, 470 (1960). Further, employee benefit trust funds and fund trustees have standing to sue as third-party beneficiaries of a CBA. 29 U.S.C. § 185(a); *see also Chi. Plastering Inst. Pension Trust Fund v. William A. Duguid Co.,* 761 F. Supp. 1345, 1347 n.2 (N.D. Ill. 1991).

Taking the well-pleaded facts of the Complaint as true, NASI Funds have established that 715 Fire Protection was a party to the CBA and was required to contribute to the Funds per the CBA. Defendant 715 Fire Protection failed to make such contributions in violation of 29 U.S.C. § 185(a). *See* ECF No. 1 ¶ 12. Defendants are thus liable for violating § 301 of the Labor Relations Act. Default judgment as to liability is thus GRANTED.

### B. Damages

As to damages, Plaintiffs by statute may collect (1) delinquent contributions, (2) liquidated damages assessed on the late contributions, (3) interest at the rate provided in 29 U.S.C. § 1132(g), (4) attorneys' fees and costs, and (5) other legal or equitable relief the Court

deems appropriate. *See* 29 U.S.C. § 1132(g). In support of their damages request, Plaintiffs submit the relevant CBA and Trust Agreements (ECF Nos. 8-5–8-14); a declaration of Plaintiffs' Assistant Fund Administrator of the National Sprinkler Industry Welfare Fund, John P. Eger (ECF No. 8-4); a separate audit of the award amount (ECF No. 8-16); and the Settlement Agreement and Promissory Note executed by Matthew and Sarah Jungbluth (ECF Nos 8-15). As for attorneys' fees and costs, Plaintiffs submit the affidavit of Charles W. Gilligan, Esq., the attorney assigned to this case. ECF No. 8-17. Because this evidence is sufficient for the Court to ascertain allowable damages, and the requested amounts are consistent with the damages sought in the Complaint, the Court will award damages without a hearing. *See* ECF Nos. 1, 8-4.

1. **Unpaid Contributions**

Pursuant to an audit conducted in November 2018, 715 Fire Protection owes NASI Funds $94,847.63 in unpaid contributions for the months of February 2018 through September 2018. ECF Nos. 8-4, 8-16. Based on this evidence, the Court awards $94,847.63 in unpaid contributions.

2. **Liquidated Damages**

The pertinent Trust Agreements provide that an employer's failure to pay timely contributions under the CBA triggers payment of liquidated damages as follows: (1) 10% penalty on payment not received by the 15th of the month; (2) an additional 5% on payment not received by the end of the month; and (3) an additional 5% on payment not received by the 15th of the month following the month in which payment was due. ECF No. 1 ¶ 17. The Court has reviewed the delinquent payment amounts and the penalties assessed as liquidated damages. *See* ECF No. 8-16. Based on this evidence, the Court awards $18,405.40 in liquidated damages.

3. **Amounts Due Under the Settlement Agreement and Promissory Note**

Defendants owe NASI Funds $55,826.16 as a result of Defendants' default on the Settlement Agreement and Promissory Note for missed payments predating the timeframe articulated in the Complaint. ECF No. 8-16. This amount includes the previously waived liquidated damages, which are reinstated because Defendants failed to comply with the settlement documents. ECF No. 8-15 ¶ 13 ("[I]f 715 Fire [Protection] fails to make any scheduled payment . . . the Funds may declare the entire principal amount of that Note, together with reinstated liquidated damages and accrued interest thereon, immediately due and payable."). Although Defendants made initial payments towards the balance of the Settlement Agreement, these payments ceased after May 2018. ECF No. 1 ¶ 11. Based on this evidence, the Court awards $55,826.16 due as a result of the Defendants' default on the Settlement Agreement and Promissory Note.[1]

### 4. Interest

Plaintiffs are also entitled to interest on unpaid contributions. Interest is "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g). Pursuant to 29 U.S.C. § 1132(g)(2)(B) and the Trust Agreements, an annual interest rate of 12% on Defendants' unpaid contributions through November 26, 2018 is awarded in the amount of $4,703.42, plus accruing interest through the date of payment. 29 U.S.C. § 1132(g)(2)(B); *see also* ECF No. 8-8 at 24 (stating that delinquent employers will owe "interest from the due date to the date of payment at the rate determined by the Trustees which may not exceed the rate provided under Section 6621 of the Internal Revenue Code").

Additionally, Plaintiffs are entitled to post-judgment interest. *See* 28 U.S.C. § 1961(a)

---

[1] The Court notes that in the Complaint, Plaintiffs requested $60,615.00 "for contributions and reinstated liquidated damages currently owed under the settlement documents." ECF No. 1 ¶ 11. Plaintiffs offer no explanation for the reduction in damages now requested. While Plaintiffs' Complaint and supporting documentation substantiates the higher amount originally sought, the Court will award the relief now requested.

8

("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *see also I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Slyman Indus.,* 704 F. Supp. 301, 302–03 (D. D.C.), *aff'd,* 901 F.2d 127, 129 (D.C. Cir. 1990). Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). Thus, post-judgment interest shall continue to accrue until the judgment is satisfied.[2]

### 5. Attorneys' Fees and Costs

NASI Funds are also entitled to attorneys' fees and costs under the Trust Agreements. ECF No. 8-8 at 25 ("All reasonable expenses incurred by the Trust Fund to enforce the payment of amounts due, including, but not limited to, reasonable attorneys' fees, accountants' or auditors' fees, and court costs will be added to the amount owed by the delinquent Employer."). The Court considers the reasonableness of attorneys' fees under Appendix B to the Local Rules and the following factors: the professional time and labor invested, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the lawyer's acceptance of the particular engagement will preclude other employment; the fee customarily charged in the locality for similar legal services; the amount in controversy and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the

---

[2] Although the damages sought are greater than the amounts pleaded in the Complaint, the award is nonetheless appropriate. This is because default judgment may include "all contributions and liquidated damages which become due after this action was filed and through the date of judgment, plus costs, interest, and reasonable attorney's fees." ECF No. 1 at 7 ¶ E. The Court finds that the additional amounts as articulated above are proper under Federal Rule of Civil Procedure 54(c). *See Trs. of Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-17-0449, 2017 WL 4898264, at *5 (D. Md. Oct. 27, 2017); *see also Trs. of Nat'l Automatic Sprinkler Indust. Welfare Fund v. First Responder Fire Prot. Corp.*, No. GJH-16-4000, 2017 WL 3475678, at *2 (D. Md. Aug. 11, 2017) ("Defendant is fairly regarded to be on notice of the subsequent increase due to the continuing obligations to make contributions to the Funds under the applicable collective bargaining agreements.").

client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); Loc. R., App. B.

NASI Funds are represented by Charles W. Gilligan, of the law firm of O'Donoghue & O'Donoghue LLP, who has been a member of the Bar of the United States District Court for the District of Maryland since 1986, and a partner at the firm since 1993. *See* ECF No. 8-17 ¶ 2. Gilligan charged $310.00 per hour, and his paralegal, Teresa Butler, charged a rate of $122.00 per hour. *Id.* ¶ 5. Teresa Butler has been employed as a paralegal at O'Donoghue & O'Donoghue LLP, since 1985. *Id.* ¶ 2. These rates fall within the presumptively reasonable ranges established by this Court's Local Rules. Loc. R., App. B.3.

Gilligan attests that he spent 0.75 hours and Butler spent 11.50 hours on this matter, both of which appear reasonable given the nature and scope of this case. *See* ECF No. 8-17 ¶ 3; ECF No. 8-18. The lodestar calculation (reasonable hourly rate multiplied by hours of work performed) thus supports the requested award of $1,635.50 in attorneys' fees. *See* ECF No. 8-18. The record also supports Plaintiffs' request for $585.00 in miscellaneous legal costs. *See* ECF Nos. 8-18, 8-19. Therefore, the Court GRANTS Plaintiffs' request for $1,635.50 in attorneys' fees and $585.00 in costs.

## IV. CONCLUSION

Plaintiffs' Motion for Default Judgment is GRANTED. Judgment in the amount of $176,003.11 shall be entered against Defendants 715 Fire Protection, LLC, Matthew Jungbluth, and Sarah Jungbluth for unpaid contributions, unpaid amounts under the settlement agreement, liquidated damages, interest, and attorneys' fees and costs, plus additional contributions, liquidated damages, costs, interest, and reasonable attorneys' fees that became due from the date

this action was filed and through the date of judgment. Additionally, post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, shall continue to accrue until the judgment is satisfied. A separate Order will follow.

| | |
|---|---|
| 4/4/2019 | /S/ |
| Date | Paula Xinis<br>United States District Judge |